United States District Court
Southern District of Texas
**ENTERED**
June 22, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PENINSULA PETROLEUM FAR EAST PTE. LTD., | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-337 |
| | § | |
| CRYSTAL CRUISES, LLC, *et al*., | § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion to vacate a Supplemental Admiralty Rule B ("Rule B") attachment filed by Defendant Crystal Cruises, LLC and its assignee in a related Florida state-court proceeding (collectively "Crystal"). The Court has held the required hearing under Supplemental Admiralty Rule E(4)(f) ("Rule E(4)(f)") and has considered the relevant case law and the entire record in the case. Crystal's motion (Dkt. 19) is **DENIED**.

## I.    BACKGROUND

This case arises out of Crystal's apparent financial collapse and its allegedly somewhat Byzantine efforts to avoid paying one of its creditors, Plaintiff Peninsula Petroleum Far East Pte. Ltd. ("Peninsula"). The Rule B writ issued by this Court at Peninsula's request attaches and garnishes Crystal's account with MUFG Bank. (Dkt. 3; Dkt. 24 at p. 2).

In its live verified complaint, Peninsula alleges that it sold marine fuel to Crystal for use in two cruise vessels, the CRYSTAL SYMPHONY ("the SYMPHONY") and the

CRYSTAL SERENITY ("the SERENITY"). (Dkt. 34 at pp. 2–3). Although Peninsula has been able to recover some of its money, it claims that Crystal still owes it $629,074.98, in addition to related contractual costs such as interest and attorney's fees, under invoice 15166521 for fuel provided to the SYMPHONY. (Dkt. 34 at p. 3).

Peninsula has pursued payment from Crystal in several actions filed in various jurisdictions; but, according to Peninsula, Crystal has repeatedly and improperly thwarted its collection efforts. Peninsula first filed suit in the Southern District of Florida to arrest the SYMPHONY and the SERENITY when it learned that the two vessels were set to make a port call in Miami, where Crystal's principal place of business is located. (Dkt. 19 at p. 2; Dkt. 30-2 at pp. 1–2). However, Crystal diverted the two vessels to other ports. (Dkt. 30-2 at p. 2). The SYMPHONY went to the Bahamas, and it stayed there because Den nordske Bank ("DNB"), which holds the mortgage on both the SYMPHONY and the SERENITY, arrested it. (Dkt. 30-2 at p. 2). The SYMPHONY had passengers on it who had been expecting to disembark in Florida; those passengers were offloaded in the Bahamas and transported to Fort Lauderdale. (Dkt. 30-2 at p. 2).

As for the SERENITY, Peninsula retained counsel in Panama to arrest it, but Crystal again diverted the SERENITY before it made a port call. (Dkt. 30-2 at p. 2). The SERENITY then headed to Aruba, where Peninsula once again retained local counsel to arrest it. (Dkt. 30-2 at p. 2). Aruban authorities refused to allow the SERENITY to make a port call; and the SERENITY eventually joined the SYMPHONY in the Bahamas, where, like the SYMPHONY, it was arrested by DNB. (Dkt. 30-2 at p. 2). It seems that passengers from the SERENITY, like those from the SYMPHONY, had to be offloaded

2

in the Bahamas and transported to Fort Lauderdale. (Dkt. 24 at p. 7). Once it located the SYMPHONY and the SERENITY, Peninsula brought proceedings in the Bahamas to arrest them. (Dkt. 30-2 at p. 2).

Peninsula also filed three other actions: a Uruguayan proceeding in which Peninsula attached another Crystal vessel, the CRYSTAL ENDEAVOR ("the ENDEAVOR"), which led to a settlement with the ENDEAVOR's mortgage holder;[1] a proceeding in the Northern District of Texas in which Peninsula has obtained a writ attaching and garnishing a Bank of America account held by Crystal;[2] and this proceeding. (Dkt. 30-2 at pp. 2–3).

Peninsula has represented to the Court without contradiction that the SYMPHONY and the SERENITY have been sold in the Bahamas for a total of $128 million but that DNB is owed almost $156 million on its mortgages, resulting in a post-sale deficiency of nearly $28 million on DNB's liens alone. (Dkt. 38 at pp. 1–2). Peninsula has further represented to the Court without contradiction that, under Bahamian law, DNB's liens take priority over and will extinguish Peninsula's liens. (Dkt. 24 at p. 7; Dkt. 38 at p. 2). Peninsula also claims, again without contradiction, that Crystal's assets in Florida—down to the office furniture—have been liquidated and that Crystal has "debt likely exceeding $100 million." (Dkt. 38 at p. 2; Dkt. 38-2).

---

[1] Crystal argues that Peninsula's settlement with the ENDEAVOR's mortgage holder calls into question Peninsula's "standing to maintain the Rule B attachment" because Peninsula assigned its rights in two fuel invoices to the ENDEAVOR's mortgage holder. (Dkt. 25 at p. 2). The Court disagrees. The evidence in the record shows that the settlement covered the invoices numbered 151056528 and 151056590. (Dkt. 25-1; Dkt. 25-2). Invoice number 151056527, in the amount of $629,074.98, remains outstanding and was not included in the settlement; and Peninsula did not assign its rights in that invoice. (Dkt. 30-2 at p. 3).

[2] *See* Northern District of Texas case number 3:22-CV-241.

## II.    THE LEGAL STANDARD

Peninsula filed this suit to invoke Rule B, which provides that:

> [i]f a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.
> Fed. R. Civ. P. Adm. Supp. R. B(1)(a).

Rule B allows a maritime attachment of property when a plaintiff complies with the Rule's filing, notice, and service requirements and establishes that: "(1) the plaintiff has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Naftomar Shipping and Trading Co. v. KMA International S.A.*, No. 6:11-CV-2, 2011 WL 888951, at *2 (S.D. Tex. Mar. 10, 2011) (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006)). Rule B "has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful." *Malin International Ship Repair & Drydock, Inc. v. Oceanografia, S.A. DE C.V.*, 817 F.3d 241, 244 (5th Cir. 2016) (quotation marks omitted).

After an attachment order has been issued, a defendant or any person claiming an interest in the restrained property may move to vacate the attachment and demand a "prompt hearing" under Rule E(4)(f). *Knox v. Hornbeck Offshore Services, LLC*, No. 3:19-CV-181, 2019 WL 3202296, at *2 (S.D. Tex. July 16, 2019). At the Rule E(4)(f)

4

hearing, the plaintiff bears the burden of establishing that the requirements of Rule B and Rule E have been satisfied and showing that the attachment should not be vacated. *Id*.

If the plaintiff meets its burden, the party seeking to vacate the attachment may call on the Court's equitable vacatur power. *Id*. Equitable vacatur may be granted "under any of the following conditions: 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Preble-Rish Haiti, S.A. v. Republic of Haiti*, 558 F. Supp. 3d 430, 433 (S.D. Tex. 2021) (citing *Aqua Stoli*, 460 F.3d at 445). However, "equitable vacatur is not *required* even if the defendant shows at a Rule E hearing that one of the limited grounds for equitable vacatur is present; rather, the court in its discretion must still determine whether equity weighs in favor of vacating the attachment." *Boland Marine & Industrial, LLC v. Bouchard Transportation Co., Inc.*, No. 1:20-CV-66, 2020 WL 10051743, at *11 (W.D. Tex. Feb. 28, 2020), *adopted*, 2020 WL 10051738 (W.D. Tex. Mar. 26, 2020) (emphasis added); *see also Hyundai Merchant Marine Co. Ltd. v. Oceanic Petroleum Source PTE Ltd.*, 656 F. Supp. 2d 416, 420 (S.D.N.Y. 2009) (denying a motion to vacate even though "one of the limited grounds for vacatur enumerated in *Aqua Stoli* [wa]s present" on the basis that "the balance of the equities weigh[ed] against vacatur" because "there [wa]s a meaningful possibility that any judgment on the merits procured by [the] plaintiff in [a related] arbitration w[ould] go unsatisfied"). The party seeking to vacate the attachment

bears the burden of showing that equitable vacatur is appropriate. *Preble-Rish*, 558 F. Supp. 3d at 433; *Hyundai*, 656 F. Supp. 2d at 420.

## III.   ANALYSIS

Crystal argues that equitable vacatur is appropriate[3] on two grounds: (1) "[D]efendants are subject to suit in the Southern District of Florida and Plaintiff has perfected *in personam* jurisdiction against Defendants in that forum[;]" and (2) "[P]laintiff arrested the CRYSTAL SYMPHONY and the CRYSTAL SERENITY in the Bahamas." (Dkt. 19 at p. 11). The Court disagrees.

### a.   This District is not "adjacent" to Florida state or federal courts.

Crystal's first argument invokes the Second Circuit's admonition in its often-cited *Aqua Stoli* opinion that equitable vacatur may be appropriate if the defendant is subject to suit in a convenient adjacent jurisdiction. *See Aqua Stoli*, 460 F.3d at 445. Crystal points out that Peninsula filed a lawsuit to try to arrest Crystal's vessels in the Southern District of Florida; and Crystal contends that, as a result, the Southern District of Florida, though not literally adjacent to this District, is a "convenient" forum within the meaning of *Aqua Stoli*. (Dkt. 19 at pp. 8–11). In support, Crystal cites *China National Chartering Corp. v. Pactrans Air & Sea Inc.*, 589 F. Supp. 2d 403, 405–06 (S.D.N.Y. 2008), in which the Southern District of New York held that a district which was not literally adjacent to New

---

[3] With one exception, Crystal does not make any arguments that Peninsula has failed to meet its initial burden under Rule B and Rule E. The one exception is the standing argument that the Court addressed earlier in this opinion. (Dkt. 25 at p. 2). The Court finds that Peninsula has met its initial burden under Rule B and Rule E.

York (the Northern District of Florida) was nevertheless convenient because the Rule B plaintiff had sued the Rule B defendant there.

The Court disagrees with Crystal. The reasoning of *Pactrans* reads the word "adjacent" out of the *Aqua Stoli* opinion.[4] The passage in *Aqua Stoli* that discusses equitable vacatur on the basis that the defendant is subject to suit in a convenient adjacent jurisdiction states that:

> [t]he concept of "convenience" . . . is a narrowly circumscribed one: A district court may vacate a maritime attachment only if the defendant would be subject to an *in personam* lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought. An "across the river" case where, for example, assets are attached in the Eastern District but the defendant is located in the Southern District is a paradigmatic example of a case where an attachment should be vacated. It is less clear to us that a district court could vacate an attachment on convenience grounds where the adjacent district is more remote and therefore less obviously "convenient" to the plaintiff.
>
> *Aqua Stoli*, 460 F.3d at 444.

*Pactrans* has not been cited by any district court in the Fifth Circuit, let alone by the Fifth Circuit itself. And the willingness to create carve-outs to the requirement that a convenient jurisdiction be an adjacent jurisdiction does not appear to be uniform even within the Southern District of New York; to the contrary, some cases out of the Southern District of New York seem to apply the adjacency requirement quite strictly. *See Milestone Shipping, S.A. v. Estech Trading LLC*, 764 F. Supp. 2d 632, 637 (S.D.N.Y. 2011) (denying a motion to vacate because Ohio, the proposed convenient alternative

---

[4] Notably, when setting out the *Aqua Stoli* standard in subsequent opinions, the Second Circuit has repeatedly used the phrase "convenient *adjacent* jurisdiction[.]" *See ProShipLine, Inc. v. Aspen Infrastructures*, 585 F.3d 105, 113 (2d Cir. 2009); *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport, N.V.*, 572 F.3d 96, 104 (2d Cir. 2009); *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 51 (2d Cir. 2008) (emphasis added).

jurisdiction, is not "'adjacent' to the Southern District of New York"); *First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*, 540 F. Supp. 2d 483, 485 (S.D.N.Y. 2008) ("[T]he 'adjacent district' is generally viewed as one of another federal court within the same state (such as the Eastern District to the Southern District of New York), not one in a different state, even if the two states are adjacent."). Furthermore, one opinion out of the Southern District of New York has suggested that a defendant's "nominal[] presen[ce] in a convenient adjacent jurisdiction" does not satisfy this ground for vacatur when that defendant "ha[s] no place of business, employees, or assets there such that no meaningful judgment could be obtained by bringing suit there"—an apt description for Crystal's relationship to the Southern District of Florida under the record developed so far in this case. *Hyundai*, 656 F. Supp. 2d at 420.

In any event, the Court will construe the "convenient adjacent jurisdiction" ground for equitable vacatur narrowly, as *Aqua Stoli* itself prescribes. *Preble-Rish*, 558 F. Supp. 3d at 432–33 (concluding that the "convenient adjacent jurisdiction" ground for vacatur was not present even though the Rule B plaintiff had filed a related action to confirm and enforce an arbitration award in federal district court in New York) ("[T]his District is not 'adjacent' to New York state or federal courts."). The Court accordingly finds that Crystal has not shown that it is subject to suit in a convenient adjacent jurisdiction.

### b. The SYMPHONY and the SERENITY do not provide sufficient security for a potential judgment for Peninsula.

Crystal's second argument invokes the Second Circuit's admonition in *Aqua Stoli* that equitable vacatur may be appropriate if the plaintiff has already obtained sufficient

security for the potential judgment, by attachment or otherwise. *See Aqua Stoli*, 460 F.3d at 445. Crystal points out that Peninsula arrested the SYMPHONY and the SERENITY in the Bahamas and contends that "[i]t cannot reasonably be disputed that the value of those vessels . . . far exceeds the . . . claims that are the basis of [Peninsula's] Rule B attachment." (Dkt. 19 at p. 11). Crystal argues that, consequently, "[Peninsula] is grossly over-secured and the Rule B attachment serves no legitimate purpose." (Dkt. 19 at p. 11).

The Court again disagrees. Peninsula has represented to the Court without contradiction that the SYMPHONY and the SERENITY have been sold in the Bahamas for a total of $128 million but that DNB is owed almost $156 million on its mortgages, resulting in a post-sale deficiency of nearly $28 million on DNB's liens alone. (Dkt. 38 at pp. 1–2). Peninsula has further represented to the Court without contradiction that, under Bahamian law, DNB's liens take priority over and will extinguish Peninsula's liens. (Dkt. 24 at p. 7; Dkt. 38 at p. 2). The SYMPHONY and the SERENITY can no longer possibly secure a potential judgment for Peninsula.

The Court finds that Crystal has not shown that Peninsula has already obtained sufficient security for the potential judgment, by attachment or otherwise.

### c. The balance of the equities weighs against Crystal.

In any event, even assuming that Crystal has shown "that one of the limited grounds for equitable vacatur is present[,]" the Court "in its discretion must still determine whether equity weighs in favor of vacating the attachment." *Boland*, 2020 WL 10051743, at *11. Here, Crystal has not shown that equity favors the application of equitable vacatur.

By all indications, Crystal is in deep financial trouble. The two assets that Crystal claims can provide adequate security for Peninsula—the SYMPHONY and the SERENITY—have been liquidated and will be used to pay off another creditor, which will still be owed $28 million. Crystal points to no other asset that could provide security. Moreover, the record reflects that Crystal actively steered the SYMPHONY and the SERENITY away from ports in which it feared that Peninsula would try to arrest them and eventually steered the two vessels to a jurisdiction where DNB's lien extinguished Peninsula's. The Court finds that the balance of the equities weighs against vacatur because, without this Rule B attachment, "there is a meaningful possibility that any judgment on the merits procured by [Peninsula] will go unsatisfied." *Hyundai*, 656 F. Supp. 2d at 420; *see also Boland*, 2020 WL 10051743, at *11 ("[T]he court finds Bouchard is insolvent and, accordingly, there is a very real possibility that, without an attachment, any judgment on the merits procured by Boland may go unsatisfied. Because securing the satisfaction of a judgment is one of the fundamental purposes of Rule B attachments, equity strongly opposes vacating Boland's maritime attachment.").

Crystal's motion to vacate the Supplemental Admiralty Rule B attachment (Dkt. 19) is **DENIED**.

SIGNED AT HOUSTON, TEXAS, on June 22, 2022.

_George C. Hanks, Jr._

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE